

CONFORMED

1 | Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
2 | Brian R. England (SBN 211335)
englandb@sullcrom.com
3 | Edward E. Johnson (SBN 241065)
johnsonee@sullcrom.com
4 | SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
5 | Los Angeles, California 90067-1725
Tel.: (310) 712-6600
6 | Fax: (310) 712-8800

7 | Frank L. Bernstein (SBN 189504)
fbernstein@kenyon.com
8 | KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
9 | Palo Alto, California 94304-1216
Tel.: (650) 384-4700
10 | Fax: (650) 384-4701

11 | *Attorneys for Plaintiff Advanced*
*Messaging Technologies, Inc.*
12 |

13 | **UNITED STATES DISTRICT COURT**

14 | **CENTRAL DISTRICT OF CALIFORNIA**

15 | CV13-01526 DSF(VBKx)

16 | ADVANCED MESSAGING
TECHNOLOGIES, INC.          ) Case No.

17 |                  Plaintiff,  ) **COMPLAINT FOR PATENT**
                               ) **INFRINGEMENT AND**
18 |          v.                  ) **PERMANENT INJUNCTION**
                               )
19 | RINGCENTRAL, INC.           ) **DEMAND FOR JURY TRIAL**
                               )
20 |                  Defendant. )
                               )
21 |                             )
                               )
22 |                             )
                               )
23 | _____ )

24 |

25 |

26 |

27 |

28 |

COMPLAINT

1    Plaintiff Advanced Messaging Technologies, Inc. ("AMT"), for its

2  Complaint against Defendant RingCentral, Inc. ("RingCentral"), alleges upon

3  knowledge as to itself and its conduct and upon information and belief as to all

4  other matters, as follows:

5                          **JURISDICTION AND VENUE**

6            1.      This action arises under the patent laws of the United States,

7  including 35 U.S.C. §§ 271, 281, and 283-285.  This court has jurisdiction over

8  this action under 28 U.S.C. §§ 1331 and 1338(a).

9            2.      Venue is proper in this district under 28 U.S.C. §§ 1391(b) and

10  § 1400(b).  Defendant is doing business in this District and acts of infringement

11  have occurred in this District.

12                               **PARTIES**

13            3.      Plaintiff AMT is a corporation organized under the laws of the

14  State of Delaware with its principal place of business at 6922 Hollywood

15  Boulevard, Suite 500, Los Angeles, California, 90028.  AMT is a wholly-owned

16  subsidiary of j2 Global, Inc. ("j2 Global"), which provides messaging and

17  communications services to millions of customers around the world.

18            4.      Defendant RingCentral is a corporation organized under the

19  laws of the State of California.  RingCentral's principal place of business is 999

20  Baker Way, Fifth Floor, San Mateo, California, 94404.  RingCentral is doing

21  business in California, including in this District.  It provides "click-to-call"

22  telephone services to customers across the United States.  It solicits customers in

23  this District and offers telephone numbers in this District for use by its customers.

24                                **FACTS**

25            5.      AMT is the owner, by assignment, of U.S. Patent No. 7,957,368

26  (the "'368 Patent"), entitled "Method and apparatus for establishing

27  communications with a remote node on a switched network based on hypertext

28  calling received from a packet network," which was duly and legally issued on

1    June 7, 2011, by the United States Patent and Trademark Office ("PTO"). A copy

2    of the '368 Patent is Exhibit A hereto.

3             6.     The claims of the '368 Patent are valid and enforceable.

4             7.     RingCentral offers its customers a cloud business phone system

5    called RingCentral Professional™.

6             8.     According to RingCentral's description, one of the features of

7    the RingCentral Professional™ system is Web Phone, which includes a feature

8    called Click-to-Call Me, in which embedded RingMe code is provided on a

9    RingCentral customer's Web site.

10           9.     The systems and methods employed by RingCentral in

11    providing Click-to-Call Me directly infringe one or more claims of the '368 Patent,

12    including but not limited to Claim 1.

13          10.     Unless enjoined by this Court, RingCentral will continue to

14    infringe the '368 Patent.

15                     **<u>COUNT I</u>**

16             CLAIM FOR PATENT INFRINGEMENT

17            UNDER 35 U.S.C. § 271 ('368 PATENT)

18          11.     AMT incorporates by reference the allegations in paragraphs 1

19    through 10 of this complaint.

20          12.     RingCentral has offered to sell and provide, has sold and

21    provided, and continues to offer to sell and provide and to sell and provide, in the

22    United States and in this District, products and services that directly infringe one or

23    more claims of the '368 Patent, including, but not limited to, Claim 1.

24          13.     Unless enjoined by this Court, RingCentral will continue to

25    directly infringe the claims of the '368 Patent.

26          14.     By reason of the foregoing, RingCentral has caused AMT

27    damages in the amount of at least a reasonable royalty, to which AMT is entitled.

28

1 | **PRAYER FOR RELIEF**

2 |       WHEREFORE, AMT demands judgment on its Complaint as follows:

3 |       A.      A permanent injunction against RingCentral's continued direct

4 | infringement of the '368 Patent;

5 |       B.      An award of damages in an amount of not less than a

6 | reasonable royalty for RingCentral's direct infringement of the '368 Patent;

7 |       C.      An award of interest and costs; and

8 |       D.      Such other and further relief as the Court deems proper.

9 |

10 | Dated: March 4, 2013                    Respectfully submitted,

11 |

12 |                                         Robert A. Sacks  /EEJ
                                            _____
13 |                                         Robert A. Sacks (SBN 150146)
                                            Brian R. England (SBN 211335)
14 |                                         Edward E. Johnson (SBN 241065)
                                            SULLIVAN & CROMWELL LLP
                                            1888 Century Park East
15 |                                         Los Angeles, California 90067-1725
                                            (310) 712-6600
16 |                                         (310) 712-8800 facsimile

17 |                                         Frank L. Bernstein (SBN 189504)
                                            KENYON & KENYON LLP
18 |                                         1801 Page Mill Road, Suite 210
                                            Palo Alto, CA 94304
19 |                                         (650) 384-4700
                                            (650) 384-4701 facsimile
20 |
                                            *Attorneys for Plaintiff Advanced Messaging*
21 |                                         *Technologies, Inc.*

22 |

23 |

24 |

25 |

26 |

27 |

28 |

-3-

| | |
|---|---|
| 1 | <div align="center">**DEMAND FOR TRIAL BY JURY**</div> |
| 2 | <div align="center">Plaintiff AMT hereby demands a trial by jury.</div> |
| 3 | |
| 4 | Dated: March 4, 2013          Respectfully submitted, |

Robert A. Sacks /EEJ
_____
Robert A. Sacks (SBN 150146)
Brian R. England (SBN 211335)
Edward E. Johnson (SBN 241065)
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California 90067-1725
(310) 712-6600
(310) 712-8800 facsimile

Frank L. Bernstein (SBN 189504)
KENYON & KENYON LLP
1801 Page Mill Road, Suite 210
Palo Alto, CA 94304
(650) 384-4700
(650) 384-4701 facsimile

*Attorneys for Plaintiff Advanced Messaging Technologies, Inc.*

-4-

# EXHIBIT A

US007957368B2

(12) **United States Patent**
Narain et al.

(10) **Patent No.:** **US 7,957,368 B2**
(45) **Date of Patent:** *Jun. 7, 2011

(54) **METHOD AND APPARATUS FOR ESTABLISHING COMMUNICATIONS WITH A REMOTE NODE ON A SWITCHED NETWORK BASED ON HYPERTEXT CALLING RECEIVED FROM A PACKET NETWORK**

(75) Inventors: **Alfredo Jose Narain**, Pembroke Pines, FL (US); **German Angel**, Miami, FL (US); **Michael Anthony Wilson**, Pembroke Pines, FL (US)

(73) Assignee: **U.S.I.P. Group LLC**, Minden, NV (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 879 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **11/851,466**

(22) Filed: **Sep. 7, 2007**

(65) **Prior Publication Data**

US 2008/0031430 A1      Feb. 7, 2008

**Related U.S. Application Data**

(63) Continuation of application No. 10/353,695, filed on Jan. 29, 2003, now Pat. No. 7,274,686, which is a continuation of application No. 09/309,535, filed on May 11, 1999, now Pat. No. 6,535,506.

(51) **Int. Cl.**
| | |
|---|---|
| *H04L 12/66* | (2006.01) |
| *H04M 3/42* | (2006.01) |
| *H04M 11/00* | (2006.01) |
| *G06F 15/00* | (2006.01) |

(52) **U.S. Cl.** ..... 370/352; 370/356; 370/401; 379/88.17; 379/93.07; 379/93.24; 709/203; 709/218

(58) **Field of Classification Search** .................. 370/352, 370/356, 401; 379/88.17, 93.07, 93.24; 709/203, 709/218
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,838,682 A | 11/1998 | Dekelbaum et al. | |
| 5,963,952 A * | 10/1999 | Smith | ................... 1/1 |
| 5,995,606 A | 11/1999 | Civanlar et al. | |
| 5,999,965 A | 12/1999 | Kelly | |

(Continued)

OTHER PUBLICATIONS

USA Global Link, News Release, Apr.-May 1999, www.instantcall. com (3 pages).

(Continued)

*Primary Examiner* — Alpus H Hsu
(74) *Attorney, Agent, or Firm* — Michael P. Fortkort

(57) **ABSTRACT**

Disclosed is a system and a methodology enabling a first provider party to provide to a second recipient party software and services to enable the recipient party to embed in an Internet e-mail of the recipient party directed to an addressee, an HTML hyperlink file which includes a telecommunication initiating trigger, sending the e-mail to the addressee via the Internet, the addressee upon receiving the e-mail actuating the hyperlink via its trigger and, responsive to the trigger actuation, connecting the addressee via the Internet to a web page located on an Internet server, wherein the web page includes a request for a telephone number of the addressee. The addressee entering its telephone number information at the server, which information is communicated to a database associated with the server, the server communicating with the database and with a telephony switch, including sending to the switch instructions which result in the switch originating and managing a public switched telephone network (PSTN) communication between the recipient party and the addressee.

**9 Claims, 3 Drawing Sheets**



**US 7,957,368 B2**

Page 2

### U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 6,009,469 A | 12/1999 | Mattaway et al. |
| 6,031,904 A | 2/2000 | An et al. |
| 6,091,808 A | 7/2000 | Wood et al. |
| 6,108,704 A | 8/2000 | Hutton et al. |
| 6,130,933 A | 10/2000 | Miloslavsky |
| 6,131,121 A | 10/2000 | Mattaway et al. |
| 6,178,453 B1 | 1/2001 | Mattaway et al. |
| 6,185,184 B1 | 2/2001 | Mattaway et al. |
| 6,226,678 B1 | 5/2001 | Mattaway et al. |
| 6,259,774 B1 | 7/2001 | Miloslavsky |
| 6,269,336 B1 | 7/2001 | Ladd et al. |
| 6,275,490 B1 | 8/2001 | Mattaway et al. |
| 6,282,281 B1 | 8/2001 | Low |
| 6,347,085 B2 | 2/2002 | Kelly |
| 6,377,568 B1 | 4/2002 | Kelly |
| 6,385,646 B1 | 5/2002 | Brown et al. |
| 6,426,955 B1 | 7/2002 | Dalton et al. |
| 6,445,694 B1 * | 9/2002 | Swartz ......................... 370/352 |
| 6,463,565 B1 | 10/2002 | Kelly et al. |
| 6,502,127 B1 * | 12/2002 | Edwards et al. ............. 709/206 |
| 6,513,066 B1 | 1/2003 | Hutton et al. |
| 6,526,042 B1 | 2/2003 | Pinard et al. |
| 6,594,254 B1 | 7/2003 | Kelly |
| 6,657,990 B1 | 12/2003 | Dilip et al. |
| 6,687,738 B1 | 2/2004 | Hutton et al. |
| 6,701,365 B1 | 3/2004 | Hutton et al. |
| 6,714,536 B1 | 3/2004 | Dowling |
| 6,728,784 B1 | 4/2004 | Mattaway |
| 6,785,266 B2 * | 8/2004 | Swartz ......................... 370/352 |
| 6,829,645 B1 | 12/2004 | Hutton et al. |
| 7,486,664 B2 * | 2/2009 | Swartz ......................... 370/352 |

| | | |
|---|---|---|
| 7,512,117 B2 * | 3/2009 | Swartz ......................... 370/352 |
| 7,676,762 B2 * | 3/2010 | Shafron ...................... 715/826 |
| 2006/0129937 A1 * | 6/2006 | Shafron ...................... 715/733 |
| 2008/0144796 A1 | 6/2008 | Ringland et al. |

### OTHER PUBLICATIONS

USA Global Link, Instant Call, How Instant Call_Works, Apr.-May 1999, www.instantcall.com (1 page).

Instant, Table of Contents, About Instant Call, Apr. 16, 1999 www. installcall.com (1 page).

USA Global Link, Install Call, Answers to Frequently Asked Questions, Apr.-May 1999, www.instantcall.com (1 page).

USA Global Link, We'll Call You for Free, Apr. 16, 1999, www. instantcall.com (1 page).

USA Global Link, Instant, About Instant Call, Apr. 29, 1999 www. instantcall.com (2 pages).

USA Global Link, Instant, About Instant Call, Flexible Features, Apr. 29, 1999, www.instantcall.com (2 pages).

USA Global Link, Instant, About Instant Call, Instant Phone Connection, Apr. 29, 1999, www.instantcall.com (1 page).

USA Global Link, Instant, About Instant Call, Alternative Contact Method, Apr. 29, 1999, www.instantcall.com (2 pages).

USA Global Link, Instant, Sign Up!, Apr. 16, 1999, www.instantcall. com (1 page).

USA Global Link, Insant, Representative Program, Apr. 16, 1999, www.instantcall.com (1 page).

Priva Com B.V., Untitled Document, Apr. 17, 1999, www.privanet. com (5 pages).

* cited by examiner



FIGURE 1



FIGURE 2

S1  PROVIDER PROVIDES TO RESELLER OPERATING SOFTWARE

S2  RESELLER INSTALLS AND RUNS SOFTWARE

S3  RESELLER WEB SITE INSTALLED + MAINTAINED ON PROVIDER SERVER

S4  RESELLER PREPS E-MAIL TO PROSPECTIVE CUSTOMER

S5  RESELLER SENDS E-MAIL TO PROSPECTIVE CUSTOMER

S6  PROSPECTIVE CUSTOMER RECEIVES E-MAIL AND ACTUATES CALL BUTTON

S7  PROSPECTIVE CUSTOMER CONNECTS TO WEB PAGE OF RESELLER ON PROVIDER'S SERVER

S8  PROSPEC CUSTOMER ENTERS PHONE # ON WEB PAGE

S9  TELEPHONE NUMBER ENTERED INTO DATABASE + COMMUNICATED TO SERVER

S10  SERVER SENDS INSTRUCTION TO SWITCH

S11  SWITCH SIGNALS PSTN

S12  TELEPHONE CONNECTION ESTABLISHED VIA PSTN

S13  TERMINATE CONNECTION

END



FIGURE 3

US 7,957,368 B2

**1**

# METHOD AND APPARATUS FOR ESTABLISHING COMMUNICATIONS WITH A REMOTE NODE ON A SWITCHED NETWORK BASED ON HYPERTEXT CALLING RECEIVED FROM A PACKET NETWORK

## INDEX TO RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 10/353,695, filed 01/29/2003 now U.S. Pat. No. 7,274,686, which is a Continuation of U.S. patent application Ser. No. 09/309,535, filed May 11, 1999 which is now U.S. Pat. No. 6,535,506.

## TECHNICAL FIELD

The present invention relates to data communications terminals and networks, switched telephone networks, initiating communications connectivity on a switched network in response to hyperlink supplied data retrieved from a packet data network, and more particularly to the system and methodology for establishing and enabling the use of such networks.

## BACKGROUND ART

Telephone marketing and sales systems have been used by merchants for years to remotely accept orders from consumers without requiring a trip to a retail establishment. Merchants have traditionally advertised their products for sale to the public using print, radio and television media frequently including a telephone number for consumers to call to obtain further information and place orders for their products. Sales representatives at a centralized merchant sales facility answer the customer calls, answer questions and place orders for products.

Typically a merchant telephone sales facility includes sales representative stations. Such stations are each equipped with computer terminals for accessing product database and ordering systems. Each station further has a telephone. Incoming telephone calls from customers, placed using telephones at the customer premises, are carried by a Public Switched Telephone Network (PSTN) to the merchant telephone sales facility. Here the incoming lines are terminated at an automatic call distributor (ACD). The ACD monitors the sales representative stations for availability and activity, and routes the incoming calls to the telephone of the appropriate available sales representative. The ACD may include other functionality, such as receipt and display on the appropriate telephone of the telephone number of the calling party, using calling number identification (CID) data supplied by the PSTN.

Upon acceptance of an incoming telephone call, a sales representative solicits information from the calling party to determine the nature of the call, e.g., the product of interest to the caller, the type of information being sought, etc. The sales representative may also use the CID information to access any records about that customer that may be stored on a product database and ordering system. The ACD may further include a voice response unit (VRU) to automatically solicit preliminary information from customers, record the responses, route the call to an appropriate sales representative, and display or playback any recorded responses.

A disadvantage of such a prior art telephone marketing method is that there is no automatic way for the sales representative to know what materials prompted the customer to

**2**

place the call or what information has been reviewed by the customer immediately prior to the call. Further, the sales representative must convey all information to the caller orally or by mailing or faxing information, such as graphic literature. Because the caller may not obtain sufficient or satisfactory types of information orally, and because of the delays and inability to interactively access the customer's needs if information is sent via mail or facsimile, the customer's product evaluation and selection process may be compromised and/or sales may be lost.

In addition to conventional print, radio and television advertising, merchants are increasingly making information available, and accepting orders over electronic data links. Using a home computer, a potential customer may access a merchant's electronic catalog system, obtain product information, and may place orders. While some merchants maintain dedicated computers called "servers" to provide dedicated dialup service over the PSTN, an increasing number of businesses are accessible over the Internet. In particular, the graphics capabilities and hot links (also referred to as hot spots, hyperlinks, and hypertext) supported by hypertext transport protocol (HTTP) of the Worldwide Web (WWW) sites of the Internet, have resulted in many merchants offering their own home pages advertising their products and services.

A "client" or potential customer can access the WWW of the Internet using a home, desktop, or personal computer (PC), running web browser software such as Netscape or Internet Explorer. The client personal computer, or the like, running the browser software, has communications interfacing means for connecting to and communicating with remote servers or web sites on the Internet, conventionally via a client server. The browser software displays textual and graphical information retrieved from the web on a video display or monitor. Digital audio information is conventionally played either through speakers internal to the PC or auxiliary external speakers. Control of and data entry into the PC is provided by a keyboard and graphical input device, i.e., mouse. In particular, the user moves a cursor displayed on the monitor to designate a desired portion of the display.

The browser software provides a tool for the user to navigate the web and other types of Internet sites (e.g., FTP file transfer protocol and Gopher sites), without having to know the lengthy uniform resource locator (URL) addresses of the sites to be accessed. Instead of entering the URL, the user employs the mouse to click on a highlighted portion of text (known as "hypertext") or graphics (together known as "hyperlinks"), to retrieve associated information. The browser interprets the hypertext formatted as hypertext markup language (HTML) and transmitted using hypertext transfer protocol (HTTP). If the hypertext points to an information source outside of the current hypertext page, it initiates a service request to the URL associated with the selected hypertext. Thus, each page of information in HTML format includes not only text and graphics, but the embedded addresses of sites having related information.

Most Internet applications, including HTTP, follow a client server model. One computer system, called the server, runs the hypertext database part of the application. The server is provided by a merchant or other information source maintaining a home page on the web. Other computers, called clients, request services from the server, usually in the form of information requests. On a UNIX system the server part of the application normally runs in the background and is called a "daemon," pronounced "demon." Servers are identified by the type of service involved. Therefore, a system running the HTTP server daemon is called an HTTP server. A given computer system can have multiple servers running simulta-

US 7,957,368 B2

**3**

neously. Thus, a single server might simultaneously function as an HTTP server, an FTP server, and a LAN (local area network) server, as well as several other types of servers.

A transaction is initiated when the HTTP client requests a service or resource from the server. The client software uses a Unique Resource Identifier (URI) to determine where the desired resource resides on the Internet. A URI is either a Uniform Resource Locator (URL) or Uniform Resource Name (URN.) An URL specifies the actual location of the resource, while an URN identifies the place where the resource is located and must be translated into a an URL. In current practice URLs are always used for HTTP applications.

An HTTP server exists for the purpose of sending objects to a requester using the HTTP protocol. One such object is a Home Page. A Home Page is simply a document that has been composed or "markedup" using HTML..

A typical request-response scenario might proceed as follows. A user on a Microsoft Windows equipped operating system (OS) may be executing a Web Browser such as Netscape. The user clicks on a hot spot within the document that contains an URL. The browser recognizes the tag as identifying an URL, encapsulates it within an HTTP wrapper and passes it to the OS TCP stack, which includes code to handle the data. The OS then initiates a connection with the server's host system. Once the OS and the host system establish communication, the OS ships the request to the host. This request is passed through the various protocol layers to the HTTP daemon or server. The server interprets the request, checks its MIME (Multipurpose Internet Mail Extension) type, and sends the client the resource and information about the MIME type of the resource. When the OS receives the resource it passes it back to the browser, which examines the response. If the returned object is an HTML document, the browser displays the document on the computer display screen. If the object is a MIME type that the browser cannot handle, it checks its associate table and launches the associated helper program software, passing the resource to it for processing. In the meantime, once the request has been satisfied, either the server or the client breaks the connection, thus freeing up the browser for another request.

While the Internet and, particularly the WWW, provide for rapid dissemination of data to potential customers, interactivity is limited to the retrieval of information under client request, i.e., the pull model server. That is, the customer has control over the information retrieved from the available pages of information on the merchant's server. However, there is no means for the merchant to interactively guide the user through the various pages of information stored on the server. If a potential customer cannot locate or identify information on a product of interest, the merchant has no means to interactively assist, nor would the merchant even know of the dilemma of the customer.

An apparent lack of security is another problem that must be addressed by merchants in selling services and products on the Internet. These problems include an inability to verify the authenticity of a purchase or ability to pay for a purchase, particularly since the information may be compromised as it traverses the Internet. Therefore, many merchants rely on conventional telephone calls to take orders and accept credit card and other forms of payment. However, this requires that the potential customer identify the appropriate merchant telephone number, abandon their computer and possibly disconnect from their Internet access provider (ISP) in order to place a telephone call to the merchant.

Accordingly, it was perceived that a need existed for an Internet type browser system that would automatically ini-

**4**

tiate connectivity with a merchant over a switched telephone network, independent of the data network providing Internet connectivity with the merchant. It was further perceived that a need existed for an Internet type data retrieval system that would accommodate simultaneous and coordinated data transmission over a packet data network, and dedicated communications over a switched telephone network, between a user and a remote information provider site.

The system and method described in Dekelbaum et. al. U.S. Pat. No. 5,838,682 (682 patent), issued Nov. 17, 1998, has been offered, at least in part, in response to these and other needs.

The Dekelbaum et al. 682 patent describes a combination of network systems which includes an Internet type access arrangement having an autodialer for automatically establishing communications with the facility of a merchant over a switched network, while maintaining Internet connectivity over a packet data network. The autodialer, in combination with the merchant's server, coordinates between the Internet session and the newly established switched connectivity. The session history from the prior Internet session is supplied to a sales representative receiving the autodialed call. The sales representative is provided with a terminal for controlling the merchant's server to push data to the client in response to the interactive session simultaneously conducted over the switched network.

In a typical use of this system, a method of establishing connectivity with a remote site based on hypertext format messages is initiated by a user clicking on the appropriate hot spot or hypertext of the Merchant's Web page. This causes the Web Browser to encapsulate the appropriate URL with an HTTP wrapper and pass the message to the Windows operating system TCP stack. The operating system connects to and passes the request to the host server. The host server responds with the requested resource. The operating system receives and passes the resource to the browser, and the browser examines the MIME type to determine if it should launch the autodialer helper program. Alternatively, if the resource includes an applet, the executable content of the applet forms the autodialer, which is executed by the Web Browser directly. If the autodialer helper program is launched, it initiates a dialing sequence. Further information regarding the architecture and operation of this system may be obtained by reference to the above identified U.S. Pat. No. 5,838,682. That patent is incorporated by reference herein in its entirety.

In addition to the foregoing systems and methods proposed in the 682 patent, there is yet another hyperlink methodology now in use for initiating simultaneous data and voice communication over the Internet and the PSTN. This system is designed for use in a situation where a merchant deals with potential customers or end users of his services through an independent sales intermediary or reseller, i.e. an intermediary business. The reseller or intermediary then markets the product or service to merchants who rely on print and the like advertising and electronic commerce in marketing their products.

A survey by the Direct Marketing Association (DMA) found in 1999 that 95 percent of their respondents use the Internet for sales and marketing applications, up from 83 percent one year ago. The DMA reports that there has been a steady increase in the percentage of direct marketers having web sites, with 90 percent reporting a web presence this year. Two-thirds of the direct marketing companies surveyed said that their web site is targeted toward other businesses.

Thus, it is apparent that there is a growing electronic commerce market, and in particular a business to business market.

US 7,957,368 B2

5

The foregoing review of the development of systems to handle this demand makes it apparent that there is a need for improved systems and methodology for using a hybrid packet data and switched network for handling business to business sales in organizations which handle a large volume of transactions with independent resellers or intermediaries.

A prior art proposal for meeting that need is illustrated in the system is shown in FIG. 3. FIG. 3 shows a system for using the Internet and a call button hyperlink on a home or web page of a reseller to initiate on the Internet a telephony connection between the reseller and a prospective customer. Such a prospective customer is sometimes referred to as an end user herein. The telephony connection may be maintained via a public switched communications network (PSTN), and exist simultaneously with the Internet connection.

Referring to FIG. 3, the Internet is shown as a cloud 300. The service providing merchant or service provider operates a web server 302 and a telephone switch 304. The site of an intermediary or reseller is indicated at 306. A potential end user customer of the intermediary or reseller at 306 is shown at 308. The reseller maintains a web site or page on the server 302. The web page of the reseller includes a hyperlink, which is indicated by a graphic display, such a button, highlighted text, or the like. The web page includes an invitation to press or activate the hyperlink button to initiate an immediate telephone call to the web page proprietor. In this instance, the web page is that of the reseller. When potential end user customer reaches the web page of the reseller by browsing or by address, he examines the content of the web page and encounters the invitation to click on the hyperlink button. This is shown by the broken line at 1 in FIG. 3.

Upon activation of the hyperlink by clicking on or "pressing" the button, the server 302 validates the request and signals the telephone switch 304 to place calls to the reseller 306 and to the prospective end user customer 308. This is shown by the broken line at 2 in FIG. 3. The telephone switch 304 thereupon calls the reseller 306 and indicates that the reseller has a hyperlink call. This is shown by the broken line 3. The switch then calls the potential customer. This is shown at 4 in FIG. 3. The two calls are then bridged together by the telephone switch. The web server may now send customer data via e-mail to the reseller, and a thank you e-mail to the customer.

Among the advantages claimed for this system are the following. A simple add-in button generates a personal interaction between the provider company and a prospect, helping to convert browsers to buyers. When an interested web shopper encounters a call button on a web site, they merely click on it, initiating a pop-up menu. The menu asks the user for a call back phone number of their choice, and a time for the call back, ranging from immediately to several hours. In this manner the shopper controls the timing of the return call. There is no need to dial an 800 number and wait for a reply, and there is no need for special software. No additional hardware, software or extra phone lines are needed for a business to start using the service. It allows the merchant customer to talk to his customers at the critical moment, when they are most interested in the product or service of the merchant. Questions may be immediately answered and obstacles to closing a sale removed.

A system of the general type just described has been used commercially in the United States by USA Global Link of Fairfield, Iowa 52556. Information is available at www.instantcall.com. Another seemingly similar service appears to be on the market by PrivaCom B.V. of the Netherlands. See http://privanet.com/cnt introduction.html.

6

While these prior systems and services have advantages, and have achieved a measure of success in the marketplace, they also are subject to disadvantages. A principal disadvantage resides in the fact that the audience of potential end user customers is primarily limited to those who reach the web site of the reseller by browsing or by seeking that site by address.

A need exists for a system and method of operation of a hybrid communication system employing a switched telephone network and a packet data network that implements push model methodology to initiate switched telephone network connectivity between a merchant and a prospective end user customer. A need exists for permitting either a service provider or a service reseller employing such a system to target prospective customers by address, rather than reliance on the prospective customers accessing the provider or the reseller's web page.

DISCLOSURE OF THE INVENTION

Objectives

It is one objective of the invention to overcome limitations and disadvantages inherent in the prior systems, and to meet presently existing needs and provide all the advantages claimed for the present systems.

It is another objective of the invention to enable a push model for a system and method of operation of a hybrid communication system employing a switched telephone network and a packet data network that implements push model methodology. The push model methodology initiates switched telephone network connectivity between a merchant and a prospective end user customer, independent of the prospective customer seeking out or browsing to a node of the merchant.

It is another objective of the invention to enable a push model for a system and method of operation of a hybrid communication system employing a switched telephone network and a packet data network that implements push model methodology to initiate switched telephone network connectivity between a merchant and a prospective end user customer, whose identity is selected by the merchant for solicitation, independent of the prospective customer seeking out or browsing to a node of the merchant.

It another object of the invention to provide a system and method for a merchant or reseller to proactively provide to a prospective customer an opportunity to interactively communicate with the merchant or reseller without first initiating connection with a presence of the merchant or reseller on a packet data network.

It is still further object of the invention to provide a system and method for a merchant or reseller to use electronic mail to proactively provide to a prospective customer an opportunity to interactively communicate with the merchant or reseller, without first initiating connection with a presence of the specific merchant or reseller on a packet data network.

It is yet another object of the invention to implement a method of one entity sending to another entity by electronic mail a hypertext markup language (HTML) file containing a telecommunication initiating trigger.

It is another object to enable the recipient of an electronic mail message to immediately and automatically reach the sender via a connection over a switched telephone network.

It is a still further object of the invention to provide a system and method which enables recipient response to the electronic mail by actuation of any initiating trigger. This response to trigger actuation includes obtaining a telephone number of the actuating entity, and processing the telephone number information about that entity in consumer premises

US 7,957,368 B2

7

equipment (CPE). That CPE equipment includes a server, database, and switch. These are used to establish a telephony connection between the electronic mail originator and the recipient entity via the switch and a public switched telephone network (PSTN).

Further objects and advantages of the invention will be apparent from the following specification, claims and appended drawings.

## SUMMARY OF THE INVENTION

The present invention involves a system and a methodology enabling one party to send to another party by electronic mail, a hypertext markup language (HTML) file containing a telecommunication initiating trigger, responding to actuation of the initiating trigger at least in part by obtaining a telephone number of the other party, with the telephone number being obtained at least in part by transmission control protocol/ Internet protocol (TCP/IP) communication between the other party and a web page on a server, processing information about the other party including the telephone number, in consumer premises equipment (CPE) which includes a server, database and switch, to establish a telephony connection between the electronic mail originator and the recipient party via the switch and a public switched telephone network (PSTN).

More particularly the invention involves a system and a methodology enabling a first provider party to provide to a second recipient party software and services to enable the recipient party to embed an HTML hyperlink file in an Internet e-mail of the recipient party to an addressee. The hyperlink includes a telecommunication initiating trigger, which sends the e-mail to the addressee via the Internet. The addressee, upon receiving the e-mail, actuates the hyperlink by means of its trigger. In response to the trigger actuation, the addressee is connected via the Internet to a web page located on an Internet server, wherein the web page includes a request for a telephone number of the addressee. The addressee enters its telephone number information at the server. This information is communicated to a database associated with the server. The server communicates with the database and with a telephony switch, and sends to the switch instructions which result in the switch originating and managing a public switched telephone network (PSTN) communication between the recipient party and the addressee.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a simplified diagram of a packet data network such as the Internet, and a switched telephone network such as the PSTN, with the combined system including a server, database and a telephone switch.

FIG. 2 is a simplified flow diagram illustrating a methodology showing one example of using the system of the invention.

FIG. 3 is a simplified diagram illustrating a prior art system.

## BEST MODE FOR CARRYING OUT THE INVENTION

Referring to FIG. 1, there is shown a simplified block diagram of a system according to one preferred embodiment of the invention. A packet data network, such as the Internet, is shown as a cloud 100. A public switched telephone network or PSTN is shown as a cloud 102. A service provider is shown at 104, and a reseller is indicated at 106. A prospective cus-

8

tomer of the reseller is shown at 108. The service provider 104 is typically a company that supplies to resellers, such as the reseller 106, software and related services. This software and related services enable the reseller to implement the advertising and sale of push to talk buttons to end user customers, who may be merchants. Such sales are made by the resellers, with the necessary software and subsequent related services being provided by the service provider. The reseller is typically an independent contractor having contractual relations with the provider. The service provider may make sales to resellers or directly to end user customers.

The provider typically supplies the reseller with the software with which to implement his sales activities pursuant to the methodology of the invention. The reseller indicated at 106 maintains a telephone link to the PSTN shown at 110. This may constitute a POTS service (plain old telephone service) or, in the alternative, an ISDN or the like, connection. The telephone terminal of the reseller may be a POTS telephone or may comprise a call center including an ACD or automatic call distributor. The reseller also maintains a computer station shown at 112.

This may constitute a workstation or a personal computer (PC). The computer station 112 is provided with an Internet connection, either through an Internet service provider (ISP) or by direct connection.

The end user customer at 108 is provided with a telephone connection to the PSTN shown at 114. The end user customer is usually a merchant engaged in the sale of products or services of any of a variety of types. Such customer is also provided with a computer terminal 116, which may be a workstation or PC. The end user merchant normally engages in print, telephone, and Internet advertising, and thus is provided with an Internet connection which may constitute an ISP or direct connection.

The provider at 104 is equipped with a telephone switch 118, server 120, and database 122. The telephone switch 118 is connected to the PSTN 102, while the server 120 is connected the Internet 100. The telephone switch, server, and database are connected to the local area network or LAN 124.

Referring to the flow diagram in FIG. 2, the operation of the system of the invention according to a preferred embodiment is now described. At S1 the service provider provides to the reseller operating software for use in carrying out the methodology of the invention. This software may be physically delivered to the reseller but is conveniently provided via the Internet.

At S2 the reseller installs and runs the software in his computer terminal 112.

At S3 the web site of the reseller is installed and maintained on the server 120 of the provider.

At S4 the reseller uses the software obtained from the provider and prepares an e-mail which contains or has attached a hypertext markup language (HTML) file. That file includes a hyperlink telecommunication initiating trigger. This is sometimes referred to as a call button, hot link, or hyperlink. The reseller addresses the e-mail to a prospective customer of his choosing. To this end, the reseller may collect the e-mail addresses of individuals, businesses, or associates who he may desire to enable to utilize a call button.

At S5 the reseller sends the e-mail to the named addressee or addressees.

At S6 the prospective customer addressee examines the e-mail and activates the included call button.

At S7 the activation of the call button results in the prospective customer being connected via the Internet to the web page of the reseller. This page is maintained on the provider's server 120. That web page preferably includes dialogue

9

requesting the prospective customer to enter their address and other information, including a telephone number at which the prospective customer desires to be contacted.

At S8 the prospective customer enters their telephone number as a minimum response to the request.

At S9 the telephone number which the prospective customer entered on the reseller's web page in the provider's server 120, is communicated to and entered into the provider's database 122 which is associated with the server.

At S10 the server sends instructions to the telephone switch 118. These instructions may be analog or digital. The server may have a modem connection to the telephone switch and send DTMF (dual tone multiple frequency) signals to the switch to effect a connection to the PSTN. On the other hand, the server may use a direct packet data connection to the telephone switch.

At S11 the telephone switch signals the PSTN end office to which it is connected.

At S12 the PSTN end office establishes a telephone connection from the end user customer 108 to the reseller 106. As an alternative, the directions to the switch may result in first establishing a connection from the switch to the reseller call center. After the reseller call center is alerted to an incoming call from the specified end user customer, a connection is made from the switch to the customer. These two connections are then bridged at the switch 118.

At S13 the telephone connection through the PSTN between the reseller and the end user customer is terminated by one of the parties and the process comes to an end.

It will be apparent to those skilled in the art that the system and methodology of the invention enables one party sending to another party by electronic mail a hypertext markup language (HTML) file containing a telecommunication initiating trigger, responding to actuation of the initiating trigger at least in part by obtaining a telephone number of the other party, the telephone number being obtained at least in part by transmission control protocol/Internet protocol (TCP/IP) communication between the other party and a web page on the server.

While the foregoing has described what are considered to be preferred embodiments of the invention, it is understood that various modifications may be made therein and that the invention may be implemented in various forms and embodiments, and that it may be applied in numerous applications, only some of which have been described herein. It is intended by the following claims to claim all such modifications and variations which fall within the true scope of the invention.

It will be readily seen by one of ordinary skill in the art that the present invention fulfills all of the objects set forth above. After reading the foregoing specification, one of ordinary skill will be able to effect various changes, substitutions of equivalents and various other aspects of the invention as broadly disclosed herein. It is therefore intended that the protection granted hereon be limited only by the definition contained in the appended claims and equivalents thereof.

We claim:

1. A method for establishing a connection by a first entity between a second entity and a selected third entity of a plurality of third entities, in which said first entity is operating consumer premises equipment including an Internet server connected to the Internet and a related database and a telephony switch connected to a telephone network, each of said plurality of third entities is operating a computer terminal having a connection to the Internet and a telephone terminal having a link to the telephone network and said second entity is operating a computer terminal having a connection to the

10

Internet and a telephone terminal having a link to the telephone network, said method comprising:

provided by said first entity to said second entity via the Internet, software and services to implement push to talk trigger communications to said plurality of third entities,

installing and maintaining by said first entity in an Internet web window of said second entity dialog requesting the insertion of at least a telephone number,

responsive to activation of a push to talk trigger button received by said selected third entity via an electronic message addressed to said selected third entity from said second entity, which electronic message included software code which included a push to talk trigger button, connecting said selected third entity computer terminal via the Internet to said Internet web window of said second entity,

communicating at least a telephone number entered by said selected third entity into said second entity web window to said first entity database and related server,

sending by said server instructions to said first entity telephone switch and

signaling by said switch said telephone network, and establishing a connection between said selected third entity and said second entity via said telephone network.

2. A method according to claim 1 wherein said first entity comprises an application service provider, said second entity comprises a reseller, and said third entity comprises an end user merchant.

3. A method according to claim 1 wherein said electronic message comprises E-mail.

4. A method according to claim 1 wherein said web window of said second entity is maintained on said server of said first entity.

5. A method according to claim 1 wherein said software code comprises an HTML file.

6. A method according to claim 1 including multiple second entities each having a computer terminal connected to the Internet and a telephone terminal having a link to said telephone network, and multiple third entities each operating a computer terminal having a connection to the Internet and a telephone terminal having a link to said telephone network: said first entity providing to each said second entity via the Internet, software and services to implement a push to talk trigger communications to said third entities, each said second entity installing in said second entity computer terminal a link to said software provided by said first entity and running said software, said at least one of said first and second entities installing and maintaining in an Internet web window of each said second entity dialog requesting the insertion of at least a telephone number, each said second entity using said software to implement push to talk trigger communications to multiple third entities including preparing an electronic message addressed to selected third entities containing software code which includes a push to talk trigger, each said second entity sending said electronic messages and said software code to said selected third entities via the Internet, said selected third entities receiving said electronic messages and software code from said second entities and activating said push to talk trigger, responsive to said activation of said push to talk trigger connecting said selected third entity computer terminals via the Internet to the said Internet web windows of the said second entities, each said selected third entity entering at least a telephone number into the said second entity web window, communicating at least each said entered telephone number to said first entity database and related server, said server sending instructions to said first entity telephone switch and said switch signaling said telephone network, and

US 7,957,368 B2

<table>
<tr><td>11</td><td>12</td></tr>
</table>

establishing a connection between each said selected third entity and the second entity which sent the electronic message via said telephone network.

7. A method according to claim 6 wherein said electronic messages comprise E-mail, and said web windows of said second entities are maintained on said server of said first entity.

8. A method for establishing a telephone call between a second entity and a selected third entity of a plurality of third entities, in which a first entity is operating consumer premises equipment including an Internet server connected to the Internet and a related database and a telephony switch connected to a telephone network, each of said plurality of third entities is operating a computer terminal having a connection to the Internet and a telephone terminal having a link to the telephone network and said second entity is operating a computer terminal having a connection to the Internet and a telephone terminal having a link to the telephone network comprising:

    providing via the Internet, software and services to implement push to talk trigger communications to said plurality of third entities;

    installing and maintaining in an Internet web window dialog requesting the insertion of at least a telephone number;

    using said software to implement push to talk trigger communications to said plurality of third entities;

    preparing an electronic message addressed to said selected third entity including software code which includes a push to talk trigger button;

    sending said electronic message and said software code to said selected third entity via the Internet;

    connecting, responsive to said activation of said push to talk trigger button, said selected third entity computer terminal via the Internet to said Internet web window of said second entity;

    receiving from said selected third entity at least a telephone number entered into said second entity web window;

    communicating at least said entered telephone number to said first entity database and related server;

    sending by said server instructions to said first entity telephone switch;

    signaling by said switch said telephone network; and

    establishing a connection between said selected third entity and said second entity via said telephone network.

9. An apparatus for establishing a connection by a first entity between a second entity and a selected third entity of a plurality of third entities, in which each of said third entities operates a computer terminal connected to the Internet and has a telephone terminal linked to a network comprising:

    consumer premises equipment operated by said first entity, said consumer premises equipment including a server to connect to the Internet, a database related to said server and a telephony switch to connect to the network;

    software and services to implement push to talk trigger communications to said plurality of third entities to be provided over the Internet by the first entity to the second entity to be installed in said second computer terminal;

    said software and services including a link to said software provided by said first entity,

    a web window installed and maintained by at least one of said first and second entities including dialog requesting insertion of at least a telephone number,

    said second entity to use said software to implement push to talk trigger communications to said plurality of third entities, including to prepare an electronic message addressed to said selected third entity to include software code that includes a push to talk trigger button,

    said second entity to send said electronic message and said software code from said second computer terminal to said selected third entity computer terminal via the Internet,

    responsive to activation of said push to talk trigger button connecting said selected third entity computer terminal via the network to said web window of said second entity,

    receiving from said selected third entity at least a telephone number entered into said second entity web window,

    communicating at least said entered telephone number to said first entity database and server,

    said server sending instructions to said first entity telephone switch and

    said switch signaling said network, and

    establishing a connection between said telephone terminal of said selected third entity and said telephone terminal of said second entity via said network.

* * * * *

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV13- 1526 DSF (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [✓] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Brian R. England (SBN 211335)
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725

ORIGINAL

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| Advanced Messaging Technologies, Inc. | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV13-01526 DSF (VBKx) |
| v. | |
| RingCentral, Inc. | **SUMMONS** |
| DEFENDANT(S). | |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Robert A. Sacks_____, whose address is _Sullivan & Cromwell LLP, 1888 Century Park East, Suite 2100, Los Angeles, CA 90067_.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _March 4, 2013_____

By: _____
              Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

COPY

Robert A. Sacks (SBN 150146)
sacksr@sullcrom.com
Brian R. England (SBN 211335)
SULLIVAN & CROMWELL LLP
1888 Century Park East, Suite 2100
Los Angeles, California 90067-1725

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Advanced Messaging Technologies, Inc. | CASE NUMBER |
| PLAINTIFF(S) | CV13-01526 PSF (VBFx) |
| v. | |
| RingCentral, Inc. | SUMMONS |
| DEFENDANT(S). | |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within   21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Robert A. Sacks _____, whose address is Sullivan & Cromwell LLP, 1888 Century Park East, Suite 2100, Los Angeles, CA 90067 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: March 4, 2013

By: _____ JULIE PRADO _____
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CONFORMED

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Advanced Messaging Technologies, Inc. | RingCentral, Inc. |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Robert A. Sacks, Sullivan & Cromwell LLP, (310) 712-6600<br>1888 Century Park East, Suite 2100<br>Los Angeles, CA 90067 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No ☒ **MONEY DEMANDED IN COMPLAINT: $** To be determined at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

35 U.S.C. § 271-Infringement of U.S. Patent No. 7,957,368

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☒ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV13-01526

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): No. CV 11-4686 DDP (AJWx)

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☑ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | San Mateo County |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved .

X. SIGNATURE OF ATTORNEY (OR PRO PER): Robert A. Sacks /EEJ/    Date March 4, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |